# Supreme Court of Texas

## No. 23-0138

Oncor Electric Delivery Company NTU, LLC,

*Petitioner*,

v.

Wilbarger County Appraisal District and Wilbarger County
Appraisal Review Board,

*Respondents*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

*~ consolidated for oral argument with ~*

## No. 23-0145

Mills Central Appraisal District and Mills County Appraisal
Review Board,

*Petitioners*,

v.

Oncor Electric Delivery Company NTU LLC,

*Respondent*

**Argued March 21, 2024**

JUSTICE BUSBY delivered the opinion of the Court.

In these two property tax disputes, Oncor seeks a multimillion-dollar reduction in the total values of certain electric transmission lines in the 2019 certified appraisal rolls for the Wilbarger County Appraisal District (Wilbarger CAD) and Mills Central Appraisal District (Mills CAD). Oncor's predecessor agreed to the lines' value in each county to settle its protests of the Districts' initial appraised values, but Oncor now contends that these agreements are void due to mutual mistake.

Oncor filed unsuccessful motions for correction of the appraisal rolls with each County Appraisal Review Board (ARB) and then sued in district court in Wilbarger and Mills Counties, asserting that it was entitled to judicial review under Section 42.01 of the Tax Code as well as declaratory relief under the Uniform Declaratory Judgments Act (UDJA). These suits raise several questions regarding a taxpayer's ability to correct errors in a district's appraisal rolls once certified, as well as the finality of a "statutory agreement" between the taxpayer and a district under Section 1.111(e) of the Tax Code.#

The parties' disputes come to us on appeal from rulings on the taxing authorities' pleas to the jurisdiction. Thus, we must consider first whether questions regarding the effect of a Section 1.111(e) agreement—such as its validity and scope—are relevant to a trial court's

subject-matter jurisdiction over a suit for judicial review under Section 42.01 of the Tax Code. The trial and appellate courts below provided conflicting answers. Like the Austin Court of Appeals, we hold that the resolution of such questions does not implicate jurisdiction and remand the cases to the trial courts for further proceedings.

Because proof that a statutory agreement is valid and applicable would not deprive a trial court of subject-matter jurisdiction, we do not reach the merits of the parties' disputes about whether Oncor has identified errors eligible for correction under Sections 25.25(c) or (d) of the Tax Code, whether any such errors fall within the scope of the parties' Section 1.111(e) settlement agreements, and whether the doctrine of mutual mistake is an available defense to such agreements, applies here, and affords the remedy Oncor seeks. We likewise do not reach the parties' arguments about the UDJA or whether the ARBs are proper parties to Oncor's suit and the subsequent appeals.

## STATUTORY BACKGROUND

Determining the nature of the issues in dispute and which of them (if any) are properly before us at this procedural stage requires an understanding of the various phases of the Tax Code's administrative process. We therefore begin with an overview of that process and the remedies available to taxpayers.

"The Tax Code establishes a detailed set of procedures that property owners must abide by to contest the imposition of property taxes." *Morris v. Houston Indep. Sch. Dist.*, 388 S.W.3d 310, 313 (Tex. 2012). Under Section 42.09 of the Code, those "administrative procedures are 'exclusive' and most defenses are barred if not raised

3

therein." *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006). As a result, a taxpayer's failure to exhaust the Tax Code's exclusive administrative remedies "deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes." *Id.*

In general, the chief appraiser of each county appraisal district is responsible for preparing appraisal records listing all property that is taxable in the district and stating the appraised value of each. TEX. TAX CODE § 25.01.[1] Under certain conditions, the chief appraiser "may contract with a private appraisal firm to perform appraisal services for the district, subject to his approval." *Id.* § 25.01(b). The chief appraiser "submit[s] the completed appraisal records to the appraisal review board for review and determination of protests," *id.* § 25.22(a), which are addressed in Chapters 41 and 42 of the Code.

Taxpayers may protest the appraised value of their properties and certain other matters under Chapter 41, Subchapter C. ARBs are charged with holding a hearing on each protest at which the taxpayer is entitled to appear and offer evidence. *Id.* § 41.45. The taxpayer—and, under certain circumstances, the chief appraiser—can seek judicial review of the ARB's determination of the protest under Chapter 42. Alternatively, as occurred here, the taxpayer can settle either before or after filing a protest by agreeing to a value with the chief appraiser

---

[1] When, as here, "real property is located partially inside the boundaries of more than one appraisal district, the chief appraisers who are responsible for appraising the property shall to the greatest extent practicable coordinate their appraisals of each portion of the property to ensure to the greatest extent possible that the property as a whole is appraised at its market value." TEX. TAX CODE § 25.17(b).

under Section 1.111(e). This section provides that such an agreement "is final" if it relates to certain matters, *id.* § 1.111(e), in which case the ARB "may not review or reject" the agreement. *Id.* § 41.01(b).

Although Chapter 41 protests "are broad in scope and weigh[ted] in favor of the property owner," they are also "subject to strict time limitations." *Willacy County Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 40 (Tex. 2018). In contrast, Section 25.25 "allows corrections after the time to protest has expired and appraisal rolls have been approved," but "[s]uch corrections can be made only under limited circumstances." *Id.* For example, subsection (d) authorizes motions "to change the appraisal roll to correct an error that resulted in an incorrect appraised value for the owner's property" under certain conditions, which can be brought before the taxes become delinquent. TEX. TAX CODE § 25.25(d).[2] And subsection (c) authorizes motions to "change[] . . . the appraisal roll for any of the five preceding years to correct" certain categories of errors, including clerical errors[3]

---

[2] Subsection (d) is the only provision that subjects the property owner to a late-correction penalty and has been described as the only subsection that, among other things, "allows for the substantive reevaluation of a property's market value." *Willacy County*, 555 S.W.3d at 41. But "the roll may not be changed" under subsection (d) if "the property was the subject of a protest brought by the property owner under Chapter 41, a hearing on the protest was conducted in which the property owner offered evidence or argument, and the appraisal review board made a determination of the protest on the merits," or if "the appraised value of the property was established as a result of a written agreement between the property owner or the owner's agent and the appraisal district." TEX. TAX CODE § 25.25(d-1)(1)-(2).

[3] The Tax Code defines clerical error to mean an error "that is or results from a mistake or failure in writing, copying, transcribing, entering or retrieving computer data, computing, or calculating" or "that prevents an

5

that affect a property owner's liability for a tax imposed in that tax year. *Id.* § 25.25(c)(1). As with Chapter 41 protests, the ARB's determination of a motion to correct the appraisal roll under Section 25.25 is subject to judicial review under Chapter 42.

Chapter 42 provides for review of ARB decisions by trial de novo in district court. *Id.* § 42.23(a). Subject to limited exceptions, a petition for review "must be brought against the appraisal district" and "may not be brought against the appraisal review board." *Id.* § 42.21(b).[4] Section 42.01(a)(1) lists six types of ARB orders that the property owner is "entitled to appeal," including "a protest by the property owner as provided by Subchapter C of Chapter 41" and "a motion filed under Section 25.25." *Id.* § 42.01(a)(1)(A)-(B). Section 42.01(a)(1) separately authorizes the property owner to appeal an order of the ARB determining, among other things, "that the appraisal review board lacks jurisdiction to finally determine a protest by the property owner under Subchapter C, Chapter 41, or a motion filed by the property owner under Section 25.25 because the property owner failed to comply with a requirement of [those statutes]." *Id.* § 42.01(a)(1)(E).

---

appraisal roll or a tax roll from accurately reflecting a finding or determination made by the chief appraiser, the appraisal review board, or the assessor," but "does not include an error that is or results from a mistake in judgment or reasoning in the making of the finding or determination." TEX. TAX CODE § 1.04(18).

[4] "An appraisal district may hire an attorney that represents the district to represent the appraisal review board established for the district to file an answer and obtain a dismissal of a suit filed against the appraisal review board . . . ." TEX. TAX CODE § 42.21(b).

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Oncor's predecessor files and settles protests in several counties

Sharyland Distribution & Transmission Services, L.L.C., owned a system of four different voltages of transmission lines—345 kV, 230 kV, 138 kV, and 69 kV—that crossed several Texas counties. Sharyland timely filed Chapter 41 protests of the 2019 appraised values of its lines in Wilbarger CAD and Mills CAD, as well as eleven other county appraisal districts. As grounds for its protests, Sharyland asserted that the appraised value was incorrect as well as unequal compared with other properties. Those thirteen appraisal districts hired an appraisal firm, Pritchard & Abbott (P&A), to help them evaluate the appraised values of Sharyland's property in each county for 2019. Sharyland hired Duff & Phelps to act as its agent.[5]

Rather than appraising the property in each county according to its characteristics there, P&A employed the "unit valuation" method of appraisal. Working with Duff & Phelps, P&A began by determining the taxable value of Sharyland's property statewide, then allocated that value among different categories of property to come up with a statewide value for each category, including separate categories for transmission lines of different voltages. The next step in the process involved dividing the allocated value for each voltage category by the total number of miles of transmission lines of that voltage that Sharyland owned across the

---

[5] *See* TEX. TAX CODE § 1.111(a) ("A property owner may designate a lessee or other person to act as the agent of the owner for any purpose under this title in connection with the property or the property owner.").

thirteen appraisal districts, resulting in a "value per mile" for that type of transmission line. The final appraised value in each appraisal district would then be calculated by multiplying the mileage in each county by the "value per mile" for each type of transmission line. In other words, the 51.95 miles of 345 kV transmission line in Wilbarger County and the 74.34 miles of 345 kV transmission line in Mills County would be multiplied by the "value per mile," resulting in a final appraised value for each CAD.

To calculate the "value per mile" for each type of transmission line, P&A asked Sharyland's agent Duff & Phelps to provide the total mileages for Sharyland's 138 kV and 345 kV transmission lines. In responding, Duff & Phelps inadvertently transposed the two mileages. P&A divided the total statewide value of each type of transmission line by the mileages Sharyland's agent provided, resulting in a "value per mile" for the 345 kV transmission lines of $1,060,021. This "value per mile" was listed in P&A's final unit appraisal report, which was provided to Sharyland and each county appraisal district.

Sharyland then executed separate agreements with each appraisal district in late June 2019 settling Sharyland's protest in those districts. Sharyland's agreements with Wilbarger CAD and Mills CAD are both entitled "Settlement and Waiver of Protest," and each states a total value for Sharyland's 345 kV transmission lines within the county—$55,068,090 for Wilbarger County and $78,801,960 for Mills County. The agreements also include the following statement: "I acknowledge that the subject matter of the protest filed on the above date concerning the property described above has been settled. I hereby

8

withdraw my protest and waive my right to any further proceeding in this matter."

### B.     Oncor files motions to correct under Section 25.25

Sharyland later sold some of its transmission lines to Oncor, including its 345 kV transmission lines. In December 2019, Oncor discovered that Sharyland's agent had misreported to P&A the total statewide mileage of Sharyland's 138 kV and 345 kV transmission lines, which had resulted in a higher "value per mile" of $1,060,021[6] for the 345 kV transmission lines. Using preprinted forms provided by the ARBs for each appraisal district, Oncor then filed two Section 25.25 motions to correct the appraisal roll with the Wilbarger County ARB and two with Mills County ARB in January 2020. Oncor's selections on the forms indicated that its motions to correct concerned a "clerical error that affects Movant's liability," as well as the "[i]nclusion of property that does not exist in the form or at the location described in the appraisal roll" for the 2019 tax year. In describing the specific error for correction, Oncor wrote:

> Please correct the value per 345 kV to $378,882 per mile and the value per 138 kV to $37,145 per mile. The value per mile on the appraisal is incorrect as the mileages were switched between the two different types of lines which results in an incorrect valuation of these accounts. Please see the attachments.

Using a preprinted form, the Mills ARB issued an "Order Determining Motion to Correct Appraisal Roll," selecting the box

---

[6] If the mileages had been correctly reported, the calculation would have resulted in a "value per mile" of $378,882 for the 345 kV transmission lines.

indicating that "[t]he ARB lacks jurisdiction to determine the motion and hereby dismisses the motion." Following a hearing, the Wilbarger ARB issued an "Order Determining Motion to Correct Appraisal Roll," selecting the box indicating that "[t]he property owner's motion concerning matters permitted by Tax Code Section 25.25 is denied and the appraisal records should not be changed."

## C.     Oncor seeks judicial review

Oncor then filed parallel suits in district court seeking judicial review.

### 1.     Oncor's suit against Mills County taxing authorities

Oncor sued the Mills CAD and Mills ARB in district court in Mills County under Sections 42.01(a)(1)(B) and 42.21 of the Tax Code, asserting that the Mills ARB incorrectly concluded it lacked jurisdiction to determine the motions. Oncor also asserted that Section 25.25(g) authorizes a property owner's suit to compel the ARB to order a change in the appraisal roll. Oncor alleged that correction was authorized under subsections (c)(1) and (c)(3) of Section 25.25. It sought a judgment ordering the Mills County taxing authorities to correct the Mills CAD's 2019 appraisal roll to reflect that the 2019 taxable value of Oncor's 74.34 miles of 345 kV transmission line in Mills County is $28,166,078.

Specifically, Oncor alleged that the Mills CAD's 2019 appraisal roll contained a clerical error under various theories, including: (1) that the clerical error is the $78,801,960 value set for Oncor's 74.3 miles of 345 kV transmission line in the county; (2) that this value includes a clerical error because it is based on a determination that each mile of

10

Oncor's 345 kV transmission line had a taxable value of $1,060,021; and (3) that this per-mile value is based on an error in writing down the correct number of miles of Oncor's 345 kV transmission line in Texas. It alleged that the 2019 taxable value of Oncor's 74.34 miles of 345 kV transmission line in Mills County absent the clerical error is $28,166,078. Alternatively, Oncor complained that $50,635,882 of the $78,801,960 of taxable value attributed to Oncor's 74.34 miles of 345 kV transmission line in Mills County was attributable to miles of transmission line that did not exist in Mills County.

Mills ARB filed an answer, generally denying Oncor's allegations and asserting a plea to the jurisdiction. Mills ARB contended it was immune from suit, noting that Chapter 42 contains no waiver of immunity and provides instead that "[a] petition for review may not be brought against the appraisal review board." TEX. TAX CODE § 42.21(b). In the alternative, Mills ARB challenged jurisdiction due to Oncor's failure to exhaust its administrative remedies. Mills ARB claimed that it did not determine Oncor's 25.25(c) motions, but instead dismissed them for lack of jurisdiction based on the settlement agreement between Sharyland and the chief appraiser for Mills CAD. Because such agreements are final and binding under Section 1.111(e) of the Tax Code and an ARB is prohibited from reviewing or rejecting the agreement under Section 41.01(b), Mills ARB argued that the Code required Oncor to file a suit to compel the ARB to conduct a hearing under Section 41.45(f).

Mills CAD also filed an answer generally denying Oncor's claims and a plea to the jurisdiction based on the settlement agreement. Mills

11

CAD argued that under Section 1.111(e), the agreement is final and not subject to judicial review in a property owner's suit under Chapter 42. Mills CAD further argued that because there was no order from Mills ARB determining either motion, Section 25.25(g) is inapplicable and does not authorize appeal to the district court.

In response, Oncor not only disputed whether Section 1.111(e) agreements operate as a bar to challenges under Section 25.25, it also amended its petition to allege that the Section 1.111(e) agreement "is voidable because it was based on a mistake of fact held mutually by the parties that materially affected the agreed-on appraised value in the Settlement and Waiver of Protest." Oncor asserted that the court had jurisdiction to determine its claim of mutual mistake under the UDJA.

The trial court signed an order granting Mills CAD's plea to the jurisdiction and dismissing "this case" with prejudice, but it did not expressly address Mills ARB's plea. Oncor appealed, and the Austin Court of Appeals reversed in part and remanded for further proceedings. The court first held that the trial court's order was not a final judgment, and therefore Mills ARB was not a proper party to the interlocutory appeal because Oncor's claim against it remained pending in the trial court. 660 S.W.3d 288, 293 (Tex. App.—Austin 2022).

Turning to Oncor's claim against Mills CAD, the court concluded that the ARB's dismissal is subject to judicial review. It observed that Sections 42.01(a)(1)(B) and 25.25(g) require a "determination" by an ARB as a statutory prerequisite to suit, which includes any "final decision by a court or administrative agency." 660 S.W.3d at 294. Then, relying on this Court's opinion in *Willacy County*, the court of appeals

12

held that district courts "have jurisdiction to review the validity of [a Section 1.111(e) agreement] and, with appropriate evidence, to render a judgment finding the agreement invalid." 660 S.W.3d at 298. The court did not decide whether mutual mistake provides a defense to such an agreement. *See id.* at 299 n.3. Rather, it reversed the trial court's order dismissing Oncor's claims against Mills CAD and remanded for further proceedings. *See id.* at 300. The Mills County taxing authorities then filed petitions for review in this Court, which we granted.

### 2. Oncor's suit against the Wilbarger County taxing authorities

Meanwhile, Oncor sued the Wilbarger CAD and Wilbarger ARB in district court in Wilbarger County, asserting the same claims as in Mills County and seeking substantially identical relief. Oncor sought a judgment that the 2019 taxable value of its 51.95 miles of 345 kV transmission line in Wilbarger County is $19,682,919. It also amended its petition to assert a claim under the UDJA for mutual mistake and to determine the meaning of relevant Tax Code provisions.

Wilbarger CAD and Wilbarger ARB jointly filed a plea to the jurisdiction based on the Section 1.111(e) agreement. Acknowledging that Wilbarger ARB had denied Oncor's motion to correct on the merits, the Wilbarger County taxing authorities nonetheless argued that Section 25.25(g) does not compel a remedy where none otherwise exists under Section 25.25. Thus, an agreement under Section 1.111(e) is final and does not come within the statutory waiver of immunity allowing judicial review.

13

Responding to the plea to the jurisdiction, Oncor argued that a court may not entertain a suit to consider the *propriety* of a Section 1.111(e) agreement, but it has jurisdiction to determine the scope of the agreement. In Oncor's view, so long as an agreement does not memorialize an understanding that the appraisal roll does not contain a clerical error, later motions to correct such an error are outside the agreement's scope. Alternatively, Oncor argued the agreement was voidable under the doctrine of mutual mistake.

The Wilbarger County taxing authorities also filed a motion for partial summary judgment, arguing that (1) Oncor cannot sue under the UDJA because the Tax Code gives ARBs exclusive jurisdiction over property tax disputes; (2) Oncor's UDJA claims are barred by governmental immunity; and (3) Oncor's claim of mutual mistake is a common-law contract theory not applicable to a statutory agreement under Section 1.111(e). In response, Oncor argued that it was invoking the UDJA only to the extent the court concluded it lacked jurisdiction under the Tax Code, so its UDJA claims do not violate the redundant remedies doctrine.

The trial court denied both the plea to the jurisdiction and the motion for partial summary judgment, and the Wilbarger County taxing authorities filed an interlocutory appeal of the denial of their plea. The Amarillo Court of Appeals reversed the trial court's order and rendered judgment granting the Wilbarger County taxing authorities' plea. 660 S.W.3d 760, 762 (Tex. App.—Amarillo 2022).

The court acknowledged that unlike motions under Section 25.25(d), the statute does not contain "an express articulation

14

that an agreement precludes a challenge" under Section 25.25(c). *Id.* at 765. But the court relied on the plain language of Section 1.111(e) to hold that such agreements are final as to "any matter which may be corrected under section 25.25," *id.*, and that such finality "prohibits Oncor from pursuing judicial review of the valuation of its transmission lines in Wilbarger County." *Id.* at 763. The court of appeals also rejected Oncor's argument that the agreement was voidable based on mutual mistake, noting that this Court has thus far recognized only fraud as a permissible ground for setting aside a statutory agreement on valuation. *Id.* at 766. Oncor filed a petition for review, which we granted.

ANALYSIS

The parties' initial disputes, which are presented through pleas to the jurisdiction followed by interlocutory appeals, can be grouped into two categories: the scope of the Section 1.111(e) agreements and application of the mutual mistake doctrine. The question before us, which divided the courts of appeals, is whether these disputes are relevant to the trial courts' subject-matter jurisdiction over Oncor's appeals challenging the disposition of its Section 25.25 motions to correct the appraisal rolls.

First, Oncor asserts that its requested corrections fall outside the scope of the Section 1.111(e) agreements. According to Oncor, the agreements resolved only its predecessor's protests related to the fair market value and unequal appraisal of the transmission lines. Because Section 25.25(d) is the only provision that allows for a reevaluation of market value, Oncor argues that only subsection (d) motions to correct would be precluded because such errors in judgment or reasoning are

15

not "clerical errors" under the Tax Code. In Oncor's view, the 2019 agreements did not memorialize an understanding that the appraisal rolls do not contain clerical errors, so they do not bar later motions to correct such errors under Section 25.25(c).

Conversely, the taxing authorities contend that the asserted mistake falls under subsection (d), which applies to any "error that resulted in an incorrect appraised value," and that in any event there is no "clerical error" under subsection (c) because the chief appraiser in each county never agreed to the value Oncor now seeks to impose. In addition, they argue that the Section 1.111(e) agreements settled protests disputing the correct value-per-mile of the transmission lines in each county—the very same value Oncor now contends was erroneous and should be corrected. Thus, Oncor's challenge falls within the scope of its predecessor's agreements with each county's chief appraiser fixing the final value of the lines in that county. Additionally, Mills CAD argues that each agreement did not just settle Oncor's protests but also expressly waived any further action on the subject matter of the protests.

Second, Oncor asserts that mutual mistake, like fraud, can render a Section 1.111(e) agreement voidable. According to Oncor, at the time of the 2019 settlements, both Sharyland's agent and the firm hired by the CADs "were operating under the mutual, mistaken, belief that Sharyland owned a total of 343 miles of 345kV transmission line." The mistake therefore prevented a "meeting of the minds"[7] between

---

[7] *Cf. Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972) (noting that both express contracts and

Sharyland and the chief appraisers for each CAD because Sharyland would not have agreed to the valuations listed in its settlement agreements had it known those amounts were based upon incorrect calculations of the "value per mile" for its transmission lines. Because the mutual mistake doctrine permits reformation or recission of ordinary contracts under certain circumstances, Oncor contends it is one of the "basic contract principles" applicable to Section 1.111(e) agreements under *Willacy County*.

In response, the taxing authorities argue that the policy considerations in favor of fraud voiding a Section 1.111(e) agreement do not apply to mutual mistake. In their view, the Legislature's choice to make Section 1.111(e) agreements final and unreviewable reflects its intent to prohibit reforming or rescinding such an agreement for any reason other than failure to comply with the statute itself. Pointing out that the remedies and procedures provided in the Tax Code are exclusive and do not include a mutual mistake defense, the taxing authorities contend that declaring a Section 1.111(e) agreement voidable due to mutual mistake would be contrary to the Code's comprehensive scheme. The taxing authorities also dispute whether the asserted mistake was *mutual* when the chief appraisers simply took Oncor's predecessor

those implied in fact require "a meeting of the minds of the parties as implied from and evidenced by their conduct and course of dealing . . . the essence of which is consent to be bound").

17

Sharyland at its word, listing the property according to Sharyland's agreement and the representations of its agent.[8]

For the reasons explained below, we conclude that the judicial-review jurisdiction of district courts under Chapter 42 does not depend on the resolution of such questions regarding the preclusive effect of the Section 1.111(e) agreements. In particular, the following disputes among the parties are not jurisdictional: (1) whether Oncor's motions to correct assert a "clerical error" that may be corrected under Section 25.25(c), an error resulting in an incorrect value under Section 25.25(d), or both; (2) whether the scope of the Section 1.111(e) agreements includes any such errors; and (3) whether the mutual mistake doctrine is an available defense to such agreements, whether mutual mistakes were made by the parties to the agreements here, and what remedies are available for such mistakes. Accordingly, we do not reach the merits of those disputes.

## I.      Standard of review

We construe the Tax Code and address questions regarding the scope of a trial court's subject-matter jurisdiction and the exclusivity of

---

[8] Texas law recognizes at least three types of contractual mistakes, but the parties have not yet addressed in detail which category would apply here. *See, e.g.*, *Davis v. Grammar*, 750 S.W.2d 766, 768 (Tex. 1988); *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 335 S.W.2d 371, 373-76 (Tex. 1960); *Guggenheim Corp. Funding, LLC v. Valerus Compression Servs., L.P.*, 465 S.W.3d 673, 685-86 & n.8 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *N.Y. Party Shuttle, LLC v. Biello*, 414 S.W.3d 206, 212 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). The parties also have not thoroughly briefed, and the lower courts had no opportunity to address, whether any remedy available for mistake (if proven) would support the judgment Oncor seeks. We therefore express no view on these questions.

an agency's jurisdiction de novo. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex. 2002). This Court has recognized that the "modern direction of policy" is "to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction." *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000). Our "approach to jurisdictional questions [is] designed to strengthen finality and reduce the possibility of delayed attacks on judgments, regardless of whether the claim [is] anchored in common law or [is] a specially-created statutory action." *City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex. 2009).

Thus, even in the context of judicial review of administrative action, "our focus is to avoid a result that leaves the decisions and judgments of the [administrative agency] in limbo and subject to future attack, unless that was the Legislature's clear intent." *Id.* "[W]e have been reluctant to conclude that a provision is jurisdictional, absent clear legislative intent to that effect." *In re United Servs. Auto Ass'n*, 307 S.W.3d 299, 306 (Tex. 2020) (internal quotation marks omitted). In general, questions regarding whether a plaintiff has established its right to go forward with its suit, satisfied the requirements of a particular statute, or proven that it can prevail on the merits pertain to the plaintiff's right to relief rather than the subject-matter jurisdiction of the court to afford it. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020).

## II. The finality of Section 1.111(e) agreements does not make questions about their validity or scope jurisdictional.

"In Texas, a deal is, of course, a deal." *Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 669 (Tex. 2020). Although a Section 1.111(e) agreement is "properly characterized as a statutory agreement" rather than a contract, we held in *Willacy County* that "some basic contract principles apply." 555 S.W.3d at 52 (internal quotation marks omitted). After noting the principles that a "contract is subject to avoidance on the ground of fraudulent inducement" and that a "contract that is the product of fraudulent misrepresentations is merely voidable, not void from its inception," we concluded that "the validity of [a Section 1.111(e)] agreement may be subject to attack on the basis of fraud, even if the agreement is [by statute] not otherwise subject to review or rejection." *Id.*

Here, all parties agree that the relevant settlement agreements are valid agreements under Section 1.111(e), but they dispute the extent to which our decision in *Willacy County* determined the applicability and jurisdictional import of the doctrine of mutual mistake with respect to such agreements. Oncor notes that *Willacy County* cited a mutual mistake case, *Williams v. Glash*, 789 S.W.2d 261 (Tex. 1990). For their part, the taxing authorities argue that fraud is fundamentally different and sui generis as a basis for avoiding such agreements.

In evaluating these arguments, we are mindful that *Willacy County* came to this Court in a very different procedural posture. There, the taxpayer challenged an ARB's Section 25.25 correction order on various grounds, including that it was inconsistent with a Section 1.111(e) agreement; the trial court held a bench trial de novo

20

and found, among other things, that the agreement was void due to the taxpayer's fraud; and the court then signed a final judgment affirming the correction order on the merits. *See Willacy County*, 555 S.W.3d at 36-37.

In these cases, however, there are no final judgments, and the only rulings over which we have appellate jurisdiction concern the taxing authorities' pleas to the jurisdiction. Thus, the central and antecedent question before us today is whether any of the parties' initial disputes outlined above implicate the trial courts' subject-matter jurisdiction. *See, e.g.*, *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 456 n.19 (Tex. 2020) ("The scope of this interlocutory appeal is limited to the denial of the Cities' pleas to the jurisdiction . . . , and [a merits issue regarding the contract's] incontestability does not inform that analysis."). To answer this question, we must determine whether the Legislature's use of the word "final" in Section 1.111(e) to describe settlement agreements "means final and appealable or final and not appealable." *Sultan v. Matthew*, 178 S.W.3d 747, 748 (Tex. 2005).

Although a prior version of Section 1.111(e) provided that such agreements were "not final unless approved by the appraisal review board,"[9] the current version provides as follows:

> An agreement between an owner or the owner's agent and the chief appraiser is final if the agreement relates to a matter: (1) which may be protested to the appraisal review board or on which a protest has been filed but not determined by the board; or (2) which may be corrected under Section 25.25 or on which a motion for correction

---

[9] Act of June 15, 1989, 71st Leg., R.S., ch. 796, § 2, 1989 Tex. Gen. Laws 3591 (amended 1993) (current version at TEX. TAX CODE § 1.111(e)).

> under that section has been filed but not determined by the board.

TEX. TAX CODE § 1.111(e). Thus, "Section 1.111(e) agreements become final without approval or adoption by the ARB," and the Tax Code separately "precludes an ARB from even reviewing such agreements," much less rejecting them. *Willacy County*, 555 S.W.3d at 46-47; *see* TEX. TAX CODE § 41.01(b) ("The board may not review or reject an agreement between a property owner . . . and the chief appraiser under Section 1.111(e).").

As an initial matter, we have recognized in other contexts that the Legislature's use of the term "final" does not inherently express an intent to prevent judicial review. *See, e.g.*, *Mobil Oil Corp. v. Matagorda County Drainage Dist. No. 3*, 597 S.W.2d 910, 911 (Tex. 1980).[10] And this Court has described an administrative decision as "final" as a means of demarcating the point at which "a party has exhausted administrative remedies." *Subaru of Am.*, 84 S.W.3d at 224.[11]

---

[10] *See also Mosley v. Tex. Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 262 (Tex. 2019) (rejecting argument that administrative order "was final for purposes of appeal"); *Lindsay v. Sterling*, 690 S.W.2d 560, 563 (Tex. 1985) (holding the Administrative Procedure and Texas Register Act "indicates that a decision is not final and appealable until the motion for rehearing is overruled either expressly or by operation of law," and "[t]herefore, the thirty-day period for appealing to the district court does not begin to run until after the motion for rehearing has been overruled"); *accord Tex. Emp. Comm'n v. Stewart Oil Co.*, 267 S.W.2d 137, 138 (Tex. 1954) ("We can see no reason why the jurisdiction of the Trial Court should not attach as soon as the ruling of the Commission became final.").

[11] *See also Tex. Educ. Agency v. Houston Indep. Sch. Dist.*, 660 S.W.3d 108, 119 (Tex. 2023) ("Because the investigation . . . became final before the effective date, the District is limited to the remedies that existed before the law

Furthermore, although an ARB "has no authority to change a settlement reached by a taxpayer and the chief appraiser, it certainly has the authority to take note of what property was included." *Matagorda County Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 331 (Tex. 2005) (footnote omitted). Similarly, we have held that "before a court finds that a section 1.111(e) agreement is 'final' and therefore cannot be reviewed, it must confirm whether (1) the agreement actually constitutes a section 1.111(e) agreement, and (2) what the terms of the agreement actually cover." *Willacy County*, 555 S.W.3d at 47. Thus, the jurisdiction of ARBs and district courts must extend at least that far.

Nonetheless, "[c]ourts have held that the finality of section 1.111(e) agreements precludes judicial review of those agreements." *Id.* at 46. Courts that have characterized these questions regarding a Section 1.111(e) agreement as falling outside their jurisdiction have given one of two reasons for doing so.

First, several courts have based their jurisdictional holding on the absence of jurisdiction at the ARB.[12] Because the ARB may not review

changed."); *Igal v. Brightstar Info. Tech. Grp.*, 250 S.W.3d 78, 92 (Tex. 2008) ("When [the Texas Workforce Commission's] decision became final, Igal was bound by that decision."); *accord* TEX. TAX CODE § 41A.11 ("An arbitration award or settlement reached between the parties to an arbitration under this chapter is *considered to be a final determination of an appeal* for purposes of Subchapter C, Chapter 42." (emphasis added)); TEX. GOV'T CODE § 2001.171 ("A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter.").

[12] *See, e.g.*, *Advanced Powder Sols., Inc. v. Harris County Appraisal Dist.*, 528 S.W.3d 779, 788 (Tex. App.—Houston [14th Dist.] 2017, pet. granted,

or reject Section 1.111(e) agreements,[13] these courts reason that there can be no "order of the appraisal review board" to appeal to district court under Section 42.01. Under this view, a court must determine as a jurisdictional matter whether the relief sought would require it to review or reject an applicable Section 1.111(e) agreement. The rationale for this approach emphasizes that an ARB is "a quasi-judicial body" and therefore "must act within the strictures set by the legislature and . . . may not stray outside its specifically granted authority." *Town of Bartonville Plan. & Zoning Bd. of Adjustments v. Bartonville Water Supply Corp.*, 410 S.W.3d 23, 30 (Tex. App.—San Antonio 2013, pet. denied) (citation omitted); *see also Harris County Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 130 (Tex. 2017) (recognizing that ARBs perform quasi-judicial functions).

This theory ignores that the claim before each ARB for decision and each district court for review is a motion to correct the appraisal roll under Section 25.25, and both indisputably have jurisdiction over that claim. TEX. TAX CODE §§ 25.25, 42.01(a)(1)(B), (E). Each county's taxing authorities have raised the Section 1.111(e) agreement as a defense to that claim, and Oncor has raised mutual mistake in an effort to avoid the defense. We see nothing in the Tax Code to indicate that the result

---

judgm't vacated, remanded by agr.); *Bullseye PS III LP v. Harris County Appraisal Dist.*, 365 S.W.3d 427, 435 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Sondock v. Harris County Appraisal Dist.*, 231 S.W.3d 65, 69 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *MHCB (USA) Leasing & Fin. Corp. v. Galveston Cent. Appraisal Dist. Rev. Bd.*, 249 S.W.3d 68, 83 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

[13] *See* TEX. TAX CODE § 41.01(b).

of success on this defense should be dismissing the motion for lack of jurisdiction rather than denying it on the merits due to the preclusive effect of the agreement. *See Pike*, 610 S.W.3d at 774. As noted above, "final" does not necessarily carry that implication. And the prohibition on reviewing or rejecting the agreement is not absolute as we recognized in *Willacy County*.

In addition, we disagree that the scope of an ARB's authority necessarily dictates the scope of the district court's jurisdiction. For example, even where an administrative agency "has no authority to determine . . . or to provide a remedy" for certain aspects of a litigant's claim, we have nonetheless required an aggrieved party to "pursu[e] damages or other relief in the trial court after the agency has exercised its exclusive jurisdiction over the relevant issues." *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 619 (Tex. 2023). Similarly, an ARB's inability to "take subsequent action that is contrary to that agreement," *Bastrop Cent. Appraisal Dist. v. Acme Brick Co.*, 428 S.W.3d 911, 918 (Tex. App.—Austin 2014, no pet.), does not deprive the ARB of the "sole authority to initially decide" any issues governed by the Tax Code, nor does it divest the ARB or the court of jurisdiction when a claim is "predicated on issues or claims" governed by the Code, *Subaru of Am.*, 84 S.W.3d at 226, 228.[14]

---

[14] *Accord Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 549 (Tex. 2016) (requiring exhaustion of appeal to Commissioner of Education where litigants "do not allege that any of these laws violate the Texas Constitution; they allege that the district violates the Constitution by failing to comply with the laws" and "[t]hose same laws grant the Commissioner both the authority and the obligation to remedy the situation").

Second, some courts have held that an agreement under Section 1.111(e) "does not come within the statutory waiver of immunity allowing judicial review." *Harris County Appraisal Dist. v. McDonald*, No. 01-19-00990-CV, 2021 WL 3556215, at *3 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, no pet.). Although Section 42.01(a)(1)(B) "provides a limited statutory waiver of immunity that allows property owners to seek judicial review of an appraisal board's determination of a motion to correct filed under Texas Tax Code section 25.25," the "waiver does not extend to judicial review of" a Section 1.111(e) agreement. *Id.* Thus, establishing a Section 1.111(e) agreement "satisfie[s] [the CAD's] initial burden" to show the trial court lacks subject-matter jurisdiction because the parties entered into an agreement that makes a correction motion based on the "manner of calculating the property's . . . value unreviewable." *Id.* at 4.

In other words, this approach would have courts treat the existence of a Section 1.111(e) agreement as a "jurisdictional fact" implicating the merits of the claim, requiring that they "move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770-71 (Tex. 2018). And many jurisdictional issues are likely to arise under this approach. For example, if Section 25.25(d) governs Oncor's claims, either instead of or in addition to subsection (c), then its express carveouts—the existence of the written agreement, a prior determination by the ARB on the merits, or the ratio of the correct to incorrect appraised value, Tex. Tax Code § 25.25(d), (d-1)—would likewise be jurisdictional facts rather than reasons for denying the

26

claims on the merits. Indeed, even the exclusion of "the substantive reevaluation of a property's market value" from "[t]he limited corrections available" under subsection (c), *Willacy County*, 555 S.W.3d at 41, would carry jurisdictional import. For example, where "the error alleged by the property owner is not a clerical one," these courts have "conclude[d] that the property owner failed to affirmatively show that the Board's denial of its correction motion was reviewable by the . . . court as a decision under" Section 25.25(c)(1). *McDonald*, 2021 WL 3556215, at *5.[15]

We likewise disagree with this approach. "Sovereign immunity implicates a court's subject-matter jurisdiction, but their contours are not coextensive." *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 755 (Tex. 2017). Some statutes "waive[] a governmental unit's immunity from suit 'to the extent of liability' created by the Act." *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 286 (Tex. 2022) (quoting TEX. CIV. PRAC. & REM. CODE § 101.025(a)).[16] In contrast, any waiver of sovereign immunity here is predicated not on the viability of the litigant's claim on the merits, but on the existence of "an order of the appraisal review board determining . . . the motion filed under Section 25.25." TEX. TAX CODE § 42.01(a)(1)(B). And Chapter 42 provides for the filing of a petition for review with the district court,

---

[15] *Accord Acme Brick*, 428 S.W.3d at 917; *Houston Cement Co. v. Harris County Appraisal Dist.*, No. 14-12-00491-CV, 2013 WL 3243281, at *3 (Tex. App.—Houston [14th Dist.] June 25, 2013, no pet.).

[16] *See also, e.g.*, TEX. CIV. PRAC. & REM. CODE § 110.008(a) ("Subject to Section 110.006, sovereign immunity to suit and from liability is waived and abolished to the extent of liability created by Section 110.005 . . . .").

*id.* § 42.21(a), without reference to whether the property owner is also "entitled to a final determination by the court." *Id.* § 42.01(c).

In addition, although our decision in *Willacy County* did not need to address the separate question whether an attack on the validity of a Section 1.111(e) agreement establishes a defect in subject-matter jurisdiction or simply a defense on the merits, aspects of our opinion support viewing the inquiry as non-jurisdictional. For example, we discussed the possibility that "estoppel or quasi-estoppel may preclude [a taxpayer] from entering into an agreement under section 1.111(e)," as well as whether the CAD's failure to raise its fraud allegation before the ARB waived the issue. 555 S.W.3d at 48. Of course, subject-matter jurisdiction cannot be conferred by waiver or estoppel.[17]

*Willacy County* also held that a Section 1.111(e) agreement procured by fraudulent misrepresentations "is merely voidable, not void from its inception." *Id.* at 52. But contracts that are voidable due to fraud "remain[] enforceable" and are "voided only if the defrauded party proves a right to avoid the contract *and* chooses to do so." *Forman v. Classic Century Homes, Ltd.*, No. 02-12-00362-CV, 2014 WL 6840173, at

---

[17] *See In re Crawford & Co.*, 458 S.W.3d 920, 928 n.7 (Tex. 2015) ("We need not decide whether these statements could constitute a waiver, judicial admission, or the basis for judicial estoppel, because even if they could, such doctrines cannot create subject-matter jurisdiction where it does not otherwise exist."); s*ee also Tex. Disposal Sys. Landfill, Inc. v. Travis County Cent. Appraisal Dist.*, __ S.W.3d __, slip op. at 12 & n.40 (Tex. June 21, 2024) (No. 22-0620) (noting that parties' ability to waive exhaustion of administrative remedies under Section 42.231 of the Tax Code undermines the ordinary inference that exhaustion implicates jurisdiction, which "cannot be manufactured by consent or waiver").

*7 (Tex. App.—Fort Worth Dec. 4, 2014, no pet.) (emphasis added).[18] Conversely, a party who is fraudulently induced to enter into a voidable agreement may "engage[] in conduct that . . . ratifies the agreement and waives any right to assert the fraud as basis to avoid the agreement." *Id.* This voidable nature of a fraudulently induced Section 1.111(e) agreement is likewise inconsistent with treating the inducement defense as jurisdictional, as sovereign immunity must be waived by the Legislature rather than by a party's conduct.

After we decided *Willacy County*, the Legislature amended Section 42.01 in 2019, adopting additional provisions that confirm our indication that disputes as to the validity or scope of a Section 1.111(e) agreement do not affect the district court's subject-matter jurisdiction. For example, Section 42.01(a)(1)(e) now permits judicial review of an ARB order determining that the ARB lacks jurisdiction of a motion to correct, which is separate from subsection (a)(1)(b)'s provision for judicial review of ARB orders determining a motion to correct. The Legislature also adopted subsection 42.01(c), which recognizes the appealing property owner's "entitle[ment] to a final determination by the court" of its Section 25.25 motion—the same language used to describe a property owner who establishes its compliance with applicable prepayment requirements in an appeal under Section 42.01(a)(1)(c). *See* TEX. TAX CODE § 42.01(a)(1)(C), (b), (c).

_____

[18] *See also Harris v. Archer*, 134 S.W.3d 411, 427 (Tex. App.—Amarillo 2004, pet. denied) ("A contract which is voidable because it was the product of fraud is voided only if the defrauded party proves a right to avoid the contract and chooses to do so.").

This structural reading is also consistent with Section 42.21(h), which provides for the district court's "jurisdiction over an appeal under this chapter brought on behalf of a property owner . . . so long as the property was the subject of an appraisal review board order, the petition was filed within the period required by [Section 42.21(a)], and the petition provides sufficient information to identify the property that is the subject of the petition." In contrast, the Legislature's inclusion of more direct limitations on the availability of judicial review in other provisions of the Tax Code confirms our reluctance to treat an ARB's inability to review or reject a Section 1.111(e) agreement as jurisdictional.[19]

Finally, although we agree that the Legislature's amendments to Section 1.111(e) were intended to "make it easier for parties to reach agreements," *Sondock v. Harris County Appraisal Dist.*, 231 S.W.3d 65, 69 (Tex. App.—Houston [14th Dist.] 2007, no pet.), we see no indication that the Legislature did so in furtherance of the broader object of the administrative review process, which "is to resolve the majority of tax

---

[19] *See, e.g.*, TEX. TAX CODE § 42.21(a) (stating that "[f]ailure to timely file a petition bars any appeal under this chapter"); *id.* § 42.21(b) ("An appraisal district may . . . file an answer and *obtain a dismissal* of a suit filed against the appraisal review board in violation of this subsection." (emphasis added)); *id.* § 41A.015(j)(4) ("An award under this section . . . is final *and may not be appealed*." (emphasis added)); *id.* § 41A.09(b)(4) ("An award under this section . . . is final and may not be appealed except as permitted under Section 171.088, Civil Practice and Remedies Code, for an award subject to that section."); *id.* § 41A.03(b) (providing that the existence of a Chapter 42 appeal of a property's market value "waives the owner's right to request binding arbitration under this chapter regarding the value of that property," in which case the "arbitrator shall dismiss any pending arbitration proceeding"); *id.* § 21.10(a) (requiring the chief appraiser to "accept" as well as "approve or deny" an application for an allocation).

protests at [the administrative] level, thereby relieving the burden on the court system." *Webb County Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954 (Tex. 1990). We have previously noted that "[t]he policies behind res judicata" embody similar concerns, "'reflect[ing] the need to bring litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery.'" *Engelman Irrigation Dist.*, 514 S.W.3d at 750 (quoting *Barr v. Resol. Tr. Corp.*, 837 S.W.2d 627, 629 (Tex. 1992)). Res judicata likewise "bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former action as well as those which were actually tried." *Abbot Labs. v. Gravis*, 470 S.W.2d 639, 642 (Tex. 1971).

Unlike issues of subject-matter jurisdiction, however, res judicata is an affirmative defense on the merits that is waived if not properly pleaded. TEX. R. CIV. P. 94; *see also Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *DeBord v. Muller*, 446 S.W.2d 299, 301 (Tex. 1969). Treating a Section 1.111(e) agreement as jurisdictional would therefore confer greater finality on the parties' settlement than on a court's judgment resolving the merits of the parties' dispute. We do not think the Legislature's mere use of the word "final" can be stretched so far.

We therefore hold that although the assertion of a preclusion defense based on a Section 1.111(e) agreement may narrow the trial court's scope of review, this limitation is not jurisdictional. Rather, much as the scope of the taxpayer's Chapter 41 protest limits the

31

grounds a CAD may assert on appeal, the limitation is procedural. *See Tex. Disposal Sys. Landfill, Inc. v. Travis County Cent. Appraisal Dist.,* __ S.W.3d __, slip op. at 14-15 (Tex. June 21, 2024) (No. 22-0620). Similarly, the appealing taxpayer (or appraisal district) may only prevail on its motion to correct in district court based on matters that are either consistent with the terms of or outside the scope of a valid Section 1.111(e) agreement.

In sum, although limitations on an ARB's authority to review or reject a Section 1.111(e) agreement may restrict the scope of a court's review, they do not defeat its jurisdiction. Accordingly, the trial court in the Mills County case and the court of appeals in the Wilbarger County case erred to the extent they relied on Section 1.111(e) to hold that the taxing authorities' pleas to the jurisdiction should be granted.

### III. We need not decide questions regarding the UDJA or whether the ARBs are proper parties to Oncor's suits.

We briefly address the parties' remaining arguments regarding jurisdiction. First, Oncor pleaded its UDJA claim in the alternative, explaining that it would only be operative in the event the trial court first determined it lacked jurisdiction under Section 25.25 and Chapter 42. Because we have held that the trial courts do not lack jurisdiction, we need not address the UDJA or resolve Oncor's argument regarding the scope of its immunity waiver.

Second, the Wilbarger ARB and Mills ARB contend that regardless of whether the Section 1.111(e) inquiries are jurisdictional, the ARBs are not proper parties to Oncor's lawsuits. They rely on Section 42.21(b), which provides that "[a] petition for review may not be

32

brought against the appraisal review board" and authorizes the appraisal district to "obtain a dismissal of a suit filed" in violation of that prohibition. TEX. TAX CODE § 42.21(b). They also note that Section 42.24 authorizes the court to grant relief by adjusting the appraised value even though the ARB is not a party. On the other hand, Section 42.21(d) authorizes service on the ARB chairman.

In response, Oncor argues in part that Section 25.25(g) authorizes "suit to compel the [ARB] to order a change in the appraisal roll" independent of the procedures in Chapter 42. But we agree with the taxing authorities that the Legislature has incorporated the cause of action authorized by subsection (g) into Chapter 42, amending the statute to treat judicial review of a Section 25.25 motion as an "appeal" under that chapter. *See id.* § 42.01(a)(1)(B); *G.E. Am. Commc'n v. Galveston Cent. Appraisal Dist.*, 979 S.W.2d 761, 766 (Tex. App.— Houston [14th Dist.] 1998, no pet.).

Wilbarger ARB has not argued in any court that the question whether it is a proper party under Chapter 42 implicates either immunity or jurisdiction. In the trial court, Mills ARB argued in its plea to the jurisdiction that the Tax Code "contains no waiver of the ARB's immunity" from suit and liability.

We agree with the Austin Court of Appeals, however, that this issue "is not a question of subject-matter jurisdiction but whether the trial court's order ruled on the [Mills ARB's] jurisdictional challenge at all, *i.e.*, whether the order was a final judgment." 660 S.W.3d at 291. We also agree with that court's conclusion that the trial court's "order, construed as a whole, did not actually dispose of Oncor's cause of action

33

against the [ARB] and therefore did not actually dispose of every pending claim and party; certainly it did not do so clearly and unequivocally." *Id.* at 293.[20] The trial court's order granting Mills CAD's plea to the jurisdiction was therefore "not a final judgment, Oncor's claim against the [Mills ARB] is still pending in the trial court, and the [ARB] is not a proper party to this interlocutory appeal." *Id.*

Because our record contains no ruling from the trial court on Mills ARB's plea to the jurisdiction or the extent to which the Tax Code waives its governmental immunity, Section 51.014 of the Civil Practice and Remedies Code does not authorize Mills ARB's interlocutory appeal of this issue. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) ("A person may appeal from an interlocutory order of a district court . . . [that] grants or denies a plea to the jurisdiction by a governmental unit."); *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 451 n.2 (Tex. 2016). We therefore do not reach the merits of whether it was a proper party.

## CONCLUSION

We conclude that a Section 1.111(e) agreement poses non-jurisdictional limits on the scope of appellate review under Chapter 42 of the Tax Code. We therefore affirm the court of appeals' judgment reversing the trial court's dismissal order in *Oncor Electric Delivery Co.*

---

[20] *See Sealy Emerg. Room, L.L.C. v. Free Standing Emerg. Room Mgrs. of Am., L.L.C.*, 685 S.W.3d 816, 820 (Tex. 2024) ("There are two paths for an order to become a final judgment without a trial: the order can (1) dispose of all remaining parties and claims then before the court, regardless of its language; or (2) include unequivocal finality language that expressly disposes of all claims and parties.").

34

*NTU LLC v. Mills Cent. Appraisal District* (No. 23-0145), reverse the court of appeals' judgment reversing the trial court's denial of the pleas to the jurisdiction in *Wilbarger County Appraisal District v. Oncor Electric Delivery Co. NTU, LLC* (No. 23-0138), and remand both causes to their respective trial courts for further proceedings.

 

 

 

      J. Brett Busby
      Justice

**OPINION DELIVERED:** June 21, 2024